UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MATTHEW SPECTOR | CIVIL ACTION |
|---|---|
| VERSUS | CASE NO. 18-8806 |
| USAA CASUALTY INSURANCE COMPANY, *et al.* | SECTION: "G"(1) |

# ORDER

Pending before the Court is Defendant USAA Casualty Insurance Company and USAA General Indemnity Company's (collectively, "USAA") Motion to Dismiss.[1] In this litigation, Plaintiff Matthew Spector ("Plaintiff") alleges that Defendants Sewerage and Water Board of New Orleans ("SWB"), the City of New Orleans, and Wallace C. Drennan, Inc. are liable for flood damage to his home that was allegedly exacerbated by nearby street repairs.[2] Plaintiff also alleges that USAA is liable for improperly adjusting his insurance claim following the flooding event.[3] Having considered the motion, the memoranda in support and in opposition, oral argument, and the applicable law, the Court will grant the motion.

## I. Background

### A.   *Factual Background*

According to the Petition, Plaintiff owns property in New Orleans and carried flood insurance through USAA.[4] Plaintiff alleges that during August 2017, a rain and wind event caused

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 1-2 at 4–5.

[3] *Id.* at 3.

[4] *Id*. at 2.

flooding and significant damage to his property.[5] Plaintiff alleges that before the rain and wind event, the City of New Orleans hired Wallace C. Drennan, Inc. to repair street drainage near his home, and that this work was ongoing during the rain and wind event.[6] Plaintiff alleges that these repairs were performed negligently, and as a result, rain waters from the street pooled onto his property and caused damage to his home.[7]

Plaintiff also alleges that at the time of the rain and wind event, Plaintiff held a flood insurance policy with USAA.[8] Plaintiff alleges that within days of the rain event, he notified USAA of his losses and filed claims.[9] Plaintiff alleges that USAA sent adjusters to evaluate his losses.[10] Plaintiff then alleges that he provided his insurers with additional documentation of his losses and that USAA refused to re-evaluate his claims.[11] Plaintiff alleges that USAA violated the National Flood Insurance Act, flood insurance regulations, federal common law, and their own rules by negligently, and in bad faith, failing to adjust his claims.[12]

### B.   *Procedural Background*

Plaintiff filed a Petition in the Civil District Court for the Parish of Orleans, State of

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 3.

[12] *Id.*

Louisiana, on August 3, 2018.[13] Defendant USAA General Indemnity Co. removed the case to this Court on September 20, 2018, asserting that this Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.[14]

Defendant SWB filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 30, 2018.[15] Plaintiff filed an opposition on December 17, 2018.[16] Upon Plaintiff's request, the Court heard oral argument on January 30, 2019.[17] On February 14, 2019, the Court issued an order denying SWB's Motion to Dismiss without prejudice and granting Plaintiff leave to amend the complaint to address any deficiencies noted by the Court.[18]

Defendant USAA filed the instant Motion to Dismiss on January 21, 2019.[19] Plaintiff filed an opposition on February 5, 2019.[20] Upon Plaintiff's request, the Court heard oral argument on March 13, 2019.[21]

On February 28, 2019, after the instant motion was filed, Plaintiff filed an amended complaint to address deficiencies in the original petition as noted in the Court's Order denying

---

[13] Rec. Doc. 1-1.

[14] *See* Rec. Doc. 1.

[15] Rec. Doc. 20.

[16] Rec. Doc. 26.

[17] Rec. Doc. 24.

[18] Rec. Doc. 47.

[19] Rec. Doc. 31.

[20] Rec. Doc. 41.

[21] Rec. Doc. 24.

Defendant Sewage and Water Board of New Orleans Motion to Dismiss.[22] Plaintiff did not substantially change his factual allegations regarding USAA in the amended complaint.[23]

## II. Parties' Arguments

*A.  USAA's Arguments in Support of the Motion to Dismiss*

In the instant Motion to Dismiss, USAA argues that Plaintiff has not stated a claim upon which relief can by granted because all of Plaintiff's claims against USAA concern alleged flood damage and the USAA homeowner's policy at issue excludes coverage for flood damage.[24] USAA points to the section of the policy wherein it states it excludes coverage for water damage, including flooding.[25] USAA claims that the Homeowners Insurance Policy Coverage Disclosure Summary provided to Plaintiff pursuant to Louisiana Revised Statute § 22:1332, provides in part:

> Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss. Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.[26]

USAA argues that Plaintiff alleges damage from flooding and specifically alleges that the flooding was the result of inadequate or improper drainage, causing water to pool from below the house.[27] USAA argues that Plaintiff has pleaded no facts alleging that the damage was caused by any peril other than water damage, which is expressly excluded under the policy.[28] Therefore,

---

[22] *See* Rec. Docs. 47, 48.

[23] *See* Rec. Docs. 1, 48.

[24] Rec. Doc. 31-1 at 1.

[25] *Id.* at 2–3 (citing Rec. Doc. 31-3 at 7, 30, 32).

[26] *Id.* at 3–4 (citing Rec. Doc. 31-3 at 7).

[27] *Id.* at 5.

[28] *Id.*

4

USAA argues the USAA homeowners insurance policy does not cover the losses incurred by Plaintiff, and Plaintiff has not stated a claim against USAA upon which relief can be granted.[29]

## B. *Plaintiff's Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiff argues that in the petition, he asserts that he has stated a claim against USAA for breach of contract under the terms of the homeowners policy, negligence, and bad faith adjusting of the claim.[30] Plaintiff argues that with regard to insurance policy coverage and exclusions, the Louisiana Supreme Court provides, "[a]lthough the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy."[31] Further, Plaintiff argues that "[p]olicy exclusions must be clearly stated. Any ambiguity in an insurance policy's exclusions is construed to afford coverage."[32]

Plaintiff argues that three ambiguities exist in the instant case. First, Plaintiff states that the Petition cites "a rain and wind event" caused "flooding and property damage" at Plaintiff's home, which lead to damage due to flooding and moisture from subsequent evaporation.[33] Plaintiff

---

[29] *Id.*

[30] Rec. Doc. 41 at 1 (citing Rec. Doc. 1-1 at 2–5).

[31] *Id.* at 2 (citing *Jones v. Estate of Santiago*, 2003-1424, p. 12 (La. 4/14/04); 870 So. 2d 1002, 1010 (citing *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 5 (La. 12/19/00); 774 So. 2d 119, 124, modified on other grounds on reh'g, 00-0947 (La. 3/16/01); 782 So. 2d 573)); *see also Blackburn v. Nat. Union Fire Ins. Co. of Pittsburgh*, 2000-2668, p. 6 (La. 4/3/01); 784 So. 2d 637, 641 ("The insurer bears the burden of proving the applicability of an exclusionary clause within a policy"); *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) ("The insurer has the burden of proving that a loss comes within a policy exclusion"); Russ, 10A Couch on Ins. § 148:52 (3d ed. 2010)).

[32] *Id.* at 3 (citing *La. Maint. Servs.*, 616 So. 2d at 1252; *see also Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993) ("Any ambiguity in an exclusion should be narrowly construed in favor of coverage")).

[33] *Id.* at 4 (citing Rec. Doc. 1-1 at 2).

concedes that to the extent any property damage was caused by flooding itself, the homeowner's policy will not apply; however, Plaintiff argues the policy is ambiguous because neither the word "evaporation" nor "moisture" can be found in the policy.[34]

Second, Plaintiff states that the homeowner's policy does not exclude all water damage, specifically providing coverage in cases of "Water Backup" which includes:

> 1. Water or water-borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the "residence premises"; or
>
> 2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.[35]

Plaintiff argues the policy is ambiguous on this issue because Plaintiff alleged a wind and rain event occurred in tandem with and was exacerbated by water backed up from inadequate and improper drainage as a result of street repairs of sewers or drains located off the residence premises.[36]

Third, Plaintiff argues that the policy also provides coverage for "collapse" which is at issue in this case.[37] According to Plaintiff, the policy states that "collapse" means "[a] sudden falling or caving in; or…a sudden breaking apart or deformation such that the building or part of

---

[34] *Id.*

[35] *Id.* at 5 (citing Rec. Doc. 31-3 at 64).

[36] *Id.*

[37] *Id.*

a building is in imminent peril of falling or caving in and is not fit for its intended purpose."[38] Plaintiff also claims that the policy states collapse will be covered if caused by "weight of contents" or "weight of rain which collects on a roof."[39] Plaintiff claims that the policy applies because as a result of the incident, "the flooring contained in Plaintiff's home broke apart and deformed, may be in imminent peril of falling or caving in, and is not fit for its intended purpose."[40]

### III. Legal Standard

*A.     Legal Standard on a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[41] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[42] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[43] "Factual allegations must be enough to raise a right to relief above the speculative level."[44] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[45]

---

[38] *Id*. at 5–6 (citing Rec. Doc. 31-3 at 50).

[39] *Id*. at 6 (citing Rec. Doc. 31-3 at 50).

[40] *Id.*

[41] Fed. R. Civ. P. 12(b)(6).

[42] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[44] *Twombly*, 550 U.S. at 556.

[45] *Id.* at 570.

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[46] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[47] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[48] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[49] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[50] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[51] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[52] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[53]

---

[46] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[47] *Iqbal*, 556 U.S. at 677–78.

[48] *Id.* at 679.

[49] *Id.* at 678.

[50] *Id.*

[51] *Id.*

[52] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[53] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

**B.      *Legal Standard for Interpreting Insurance Contracts under Louisiana Law***

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[54] "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[55] "Interpretation of an insurance contract generally involves a question of law."[56]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[57] If the insurance policy contains ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[58] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd

---

[54] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)); *Mark v. Sunshine Plaza, Inc.*, No. 16-455, 2016 WL 6876645, at *2 (E.D. La. Nov. 22, 2016) (Morgan, J.) (quoting *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State farm Mut. Auto. Ins. Co.*, 2003-1801, at 3 (La. 2/25/04); 869 So.2d 96, 99)) (quotation marks omitted) (alterations omitted).

[55] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo,* 2003–1801, at 3 (La.2/25/04); 869 So.2d at 99 (citing La. Civ. Code arts. 2045, 2047)).

[56] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La. 2006)).

[57] *Prejean v. Guillory*, 2010-0740, at 6 (La. 7/2/10); 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, J.)).

[58] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)).

conclusion."[59] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[60]

### IV. Analysis

The parties agree that the insurance policy at issue in this litigation can be considered by the Court for purposes of deciding the instant Motion to Dismiss.[61] The Fifth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[62] The policy is central to Plaintiff's claims because he is claiming that USAA breached the policy, and the policy is referred to in Plaintiff's Petition for Damages; therefore, it may be considered part of the pleadings. At issue here is whether the Plaintiff has properly pled a claim against USAA in this case.

Further, the Court notes that although an amended complaint was filed in this case while the instant motion was pending, the amended complaint did not substantially change the factual allegations pertaining to USAA, the party that brought the instant Motion to Dismiss.[63] Courts may address the merits of a motion to dismiss even after an amended complaint is filed, but as a general rule, "if applying the pending motion to the amended complaint would cause confusion or detract from the efficient resolution of the issues, then it makes sense to require the defendant to

---

[59] *Id.* at 208 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).

[60] *Id.*

[61] Rec. Doc. 41 at 3.

[62] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[63] *See* Rec. Docs. 1-1, 48.

file a new motion specifically addressing the amended complaint."[64] Here, because the amended complaint makes no new allegations regarding USAA, there is no risk of confusion or inefficiency, therefore, the Court will proceed to address the motion to dismiss and sufficiency of the allegations against USAA as outlined in both the original petition and the amended complaint.

With regard to insurance policy coverage and exclusions, the Louisiana Supreme Court has stated, "[a]lthough the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy."[65] "Policy exclusions must be clearly stated. Any ambiguity in an insurance policy's exclusions is construed to afford coverage."[66]

Neither party disputes that Plaintiff's property was covered by the USAA homeowners insurance policy. Instead, the parties dispute whether the damage at issue in this case falls under an exclusion to the coverage provided by that policy. USAA asserts that the policy explicitly excluded coverage for "flooding" and that Plaintiff's claims only include factual allegations that his damages resulted from flooding.[67] In response, Plaintiff argues that ambiguities exist because he claims damages related to "moisture" and "evaporation" following the flooding, and the policy

---

[64] 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 15.

[65] *Jones v. Estate of Santiago*, 2003-1424, p. 12 (La. 4/14/04); 870 So. 2d 1002, 1010 (citing *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 5 (La. 12/19/00); 774 So. 2d 119, 124, modified on other grounds on reh'g, 00-0947 (La. 3/16/01); 782 So. 2d 573)); *see also Blackburn v. Nat. Union Fire Ins. Co. of Pittsburgh*, 2000-2668, p. 6 (La. 4/3/01); 784 So. 2d 637, 641 ("The insurer bears the burden of proving the applicability of an exclusionary clause within a policy"); *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) ("The insurer has the burden of proving that a loss comes within a policy exclusion"); Russ, 10A Couch on Ins. § 148:52 (3d ed. 2010).

[66] *La. Maint. Servs.*, 616 So. 2d at 1252; *see also Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993) ("Any ambiguity in an exclusion should be narrowly construed in favor of coverage").

[67] Rec. Doc. 31-1 at 3–5.

11

covers water damage due to "water backup" and structural damage related to "collapse."[68] However, at oral argument, Plaintiff's counsel conceded that all damages in this case arose from flooding of Plaintiff's property.

The policy states that:

Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss. Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.[69]

Further, the policy states:

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

(i) The cause of the excluded event or damage that; or

(ii) Other causes of the loss that; or

(iii) Whether the event of damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

(iv) Whether other causes or events act concurrently or in any sequence with the excluded event to produce the loss.

c. Water Damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

(1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these either or not driven by wind; or

(2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device;

---

[68] Rec. Doc. 41 at 1–6.

[69] Rec. Doc. 31-3 at 7.

12

> or
>
> (3) Water of water-borne material which backs up through sewers of drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or
>
> (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building sidewalk, driveway, foundation, swimming pool or other structure;
>
> Unless direct loss by fire, explosion or theft result from water damage and then we will pay only for the resulting loss.[70]

In the petition, Plaintiff alleges that "a rain and wind event occurred in the Orleans Parish area causing flooding and property damage in the area."[71] Plaintiff also states that his "home and contents were significantly damaged from the flooding and/or in the alternative, moisture due to evaporation of the floodwaters as a result of the rain event."[72] Based on these allegations alone, it appears that damage to Plaintiff's property, including damage caused by moisture and evaporation, is derivative of the flooding on his property. In fact, at oral argument, Plaintiff conceded that all damages were derived from the flooding at issue in this case. Therefore, because the USAA homeowners insurance policy states "[w]e do not insure for damage consisting of or caused directly or indirectly" by flooding, Plaintiffs claims are barred under the express terms of the policy.[73]

Plaintiff also alleges that SWB, the City of New Orleans, and Wallace C. Drennan, Inc.

---

[70] *Id.* at 31–33.

[71] Rec. Doc. 1-2 at 2.

[72] *Id.*

[73] See Rec. Doc. 31-3 at 31–33.

13

improperly repaired street drains nearby, which exacerbated any potential flooding on his property.[74] While the policy does not provide flood protection, it does provide additional coverage for "water backup," wherein the policy states:

> We insure for direct, physical loss caused by:
>
> 1. Water or water-borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the "residence premises"; or
>
> 2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.
>
> This coverage does not apply to loss caused directly or indirectly by any of the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:
>
>> 1. A general condition of flooding meaning a temporary condition of complete inundation of:
>>
>>> a. two or more acres of normally dry land area; or
>>>
>>> b. two or more properties
>>
>> that includes the inundation of the part of the residence premises where the insured's dwelling is located. This applies even if there is a mechanical breakdown or a disruption of power.[75]

Based on the plain language of the policy, a claim for "water backup" is based on overflow in the "plumbing system of [the insured's] dwelling or other structures."[76] However, Plaintiff does not

---

[74] Rec. Doc. 1-2 at 4–5.

[75] Rec. Doc. 31-3 at 64.

[76] *See* Rec. Doc. 31-3 at 64.

14

claim that damage to his property was caused by water or water-borne material which flowed into the plumbing system in his home, instead, he claims that flooding was exacerbated by drainage issues in the street.[77]

Finally, in the instant motion, Plaintiff points to the term "collapse" and claims that coverage applies because as a result of the incident, "the flooring contained in Plaintiff's home broke apart and deformed, may be in imminent peril of falling or caving in, and is not fit for its intended purpose."[78] However, Plaintiff makes no allegations related to "collapse" of the structure of his home in the petition, and he has not pled any facts to show that the cited section of the policy applies in this case.

---

[77] *See* Rec. Doc. 1-2 at 4–5.

[78] Rec. Doc. 31-3 at 50.

## IV. Conclusion

The express terms of the homeowners insurance policy show that it does not provide coverage for direct or indirect damage caused by flooding. All damage in this case was caused by flooding and Plaintiff does not allege facts to support a claim for "water backup" or "collapse" under the policy. Therefore, Plaintiff does not present facts to state a claim for relief that is plausible on its face. Therefore, the Court will grant USAA's Motion to Dismiss. Accordingly,

**IT IS HEREBY ORDERED** that USAA's Motion to Dismiss[79] is **GRANTED.**

**NEW ORLEANS, LOUISIANA,** this __3rd__ day of April, 2019.

*(signature)*
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[79] Rec. Doc. 31.